UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
PATRICIA IVEY,                      )
                                    )
            Plaintiff,              )
                                    )
    v.                              )    Civil Action No. 09-cv-1548 (ABJ)
                                    )
ADRIAN FENTY,                       )
                                    )
            Defendant.              )
_____)

**MEMORANDUM OPINION**

This matter is before the Court on defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Plaintiff Patricia Ivey, a former employee of the District of Columbia Child and Family Services Agency ("the Agency"), has sued former Mayor Adrian Fenty in his official capacity,[1] alleging violations of her constitutional rights and her rights under a consent decree governing the Agency. For the reasons set forth below, the Court will dismiss plaintiff's claims because she has failed to state a claim upon which relief can be granted.

---

1   Plaintiff brings her suit against the Mayor in his official capacity. Pl.'s Opp. at 6. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *See Wills v. United States*, 491 U.S. 58, 71 (1989) (citations omitted). Accordingly, the Court substitutes the District of Columbia as Defendant in this matter because it is the proper party to be sued. *See Henneghan v. DCPS*, 597 F. Supp. 2d 30, 40 (D.D.C. 2008) (substituting the District of Columbia for DCPS); *Waker v. Brown*, 2010 WL 4985921, at * 2 (D.D.C. 2010) (substituting the District of Columbia in place of mayor, police chief, and Department of Corrections).

## BACKGROUND

Plaintiff was employed as a caseworker with the Agency's Child Protective Services Unit ("Unit"), where she investigated reports of child abuse and neglect until her resignation in August 2008. Am. Compl. ¶¶ 10-11. During the period at issue in the complaint, the District of Columbia was subject to an implementation plan set forth in a consent decree and order issued in *LaShawn v. Fenty*, No. 89-1754, Dkt. No. 864 (D.D.C. Feb. 27, 2007). *Id*. ¶¶ 12-13. The February 2007 plan specified that no caseworker within in the unit was supposed to be assigned more than 12 cases at one time. *Id*. ¶ 14.

In January 2008, U.S. Marshals conducting an eviction in the District of Columbia discovered the bodies of four young girls who were allegedly murdered by their mother, Banita Jacks. *Id*. ¶ 16. Although the Agency had previously received an initial report of child abuse and neglect about the Jacks children, the assigned caseworker had never been able to make contact with the family. *Id*. ¶ 17. As a result of the murders, the Agency came under intense public scrutiny, and Mayor Fenty terminated seven employees who were involved in the Jacks case, including plaintiff's supervisor. *Id*. ¶¶ 18–20. While the number of available caseworkers was thus reduced, at the same time, in light of the publicity surrounding the treatment of the children, the number of abuse and neglect reports to the agency increased. Compl. ¶ 21. Plaintiff's claims arose in the context of this "surge" of work pending within the Unit. *See* Compl. ¶ 22.

In the wake of the Jacks case, plaintiff's caseload expanded to far exceed the 12 case limit. *See id*. ¶¶ 32–34. Plaintiff states that by April of 2008, she had been assigned 54 cases with a backlog of 47. *Id*. ¶ 50. According to plaintiff, no other caseworker had been assigned as many claims. *Id*. ¶ 37. Plaintiff reports that she was overwhelmed by her caseload, and that

despite complaints to management, nothing was done to reduce the number of cases she had been assigned. *Id*. ¶¶ 36, 49. She also alleges that her supervisor threatened her with disciplinary action if she did not eliminate her backlog. *Id*. ¶ 52. Plaintiff says she "felt" management was deliberately assigning her more cases she could handle, and she "felt" her situation was hopeless. Compl. ¶¶ 46-47. She became "angry and depressed" and "had a deep fear that a child, who was buried in her backlog, would die or suffer serious harm." *Id*. ¶¶ 43, 47.

In this case, plaintiff, who was fifty-eight in August of 2008, alleges that she was discriminated against on the basis of her age. *Id.* ¶ 2. In the spring of 2008, the Child Protective Services Unit had 50 caseworkers. *Id*. ¶ 61. Plaintiff claims that out of these caseworkers, 14 of them had been assigned 40 or more cases, *id*. ¶ 62, and that eleven of the 14 were older than 40 years old. *Id*. The complaint also states that "caseloads for younger coworkers were generally kept below 40" and that "[i]n general, younger caseworkers were not assigned as many cases as older coworkers." *Id*. ¶¶ 63, 64.

The complaint reveals that in July of 2008, management redistributed some of the cases in the Unit. Plaintiff's caseload decreased from approximately 53 cases to 30 cases, a number she still found overwhelming to manage. *Id*. ¶ 72. In August of 2008, a child accidently died from ingesting her father's prescription medication in one of the cases to which plaintiff had only recently been assigned. *Id*. ¶ 77. The Agency placed plaintiff on administrative leave while the matter was reviewed. *Id*. ¶ 80. Before that process was complete, plaintiff resigned because she "sens[ed] her termination was imminent." *Id*. ¶ 81.

On October 22, 2009, plaintiff filed this action against Mayor Fenty in his official capacity, alleging that the District of Columbia's "acts, polic[i]es, practices and procedures" violated her rights under the Due Process and Equal Protection Clauses of the Fifth Amendment

to the U.S. Constitution, 42 U.S.C. § 1983, and the consent decree in *LaShawn*. Am. Compl. at 11. In her prayer for relief, plaintiff asked the Court to (1) award her damages for lost pay and benefits with interest; (2) retain jurisdiction over this action to assure full compliance with court orders and applicable law; (3) require defendant to file reports as the Court deems necessary; (4) award her attorney's fees and costs; and (5) award her compensatory and punitive damages. *Id*. While the amended complaint contained multiple requests for "declaratory [and] injunctive relief," *see* Am. Compl. ¶¶ 2-5, plaintiff now concedes that she is not seeking equitable relief. Pl.'s Opp. at 8.

Defendant has moved for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## ANALYSIS

### I. STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal,* the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. Proc. 8(a)(2)). A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, (quoting *Twombly*, 550 U.S. at 570), and "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Id.* In ruling upon a motion to dismiss, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

When considering a motion to dismiss under Rule 12(b)(6), the complaint "is construed liberally in [plaintiff's] favor, and [the Court should] grant [plaintiff] the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.,* 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *Browning v. Clinton,* 292 F.3d 235, 242 (D.C. Cir. 2002).

## II. PLAINTIFF'S CONSTITUTIONAL CLAIMS UNDER § 1983

### A. Section 1983 Claims

Plaintiff seeks damages under 42 U.S.C. § 1983, which "authorizes equitable relief and compensatory damages against any 'person' who, under color of law, deprives another of a constitutional right." *People for the Ethical Treatment of Animals v. Gittens,* 396 F.3d 416, 424–25 (D.C. Cir. 2005). As a municipality, the District of Columbia is a "person" for purposes of §1983. *Best v. District of Columbia*, 743 F. Supp. 44, 46 (D.D.C. 1990) (citing *Monell v. Dep't*

*of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978)). But the District may be subject to liability under section 1983 "when an official policy or custom causes the complainant to suffer a deprivation of a constitutional right." *See Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986). The policy or custom itself must be "the moving force behind the constitutional violation." *Id.* (quoting *Monell*, 436 U.S. at 694); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (requiring affirmative link between the city's policy and alleged constitutional violation).

To hold the District liable under section 1983, a "plaintiff must show 'not only a violation of his rights under the Constitution or federal law, but also that the District's custom or policy caused the violation.'" *Feirson v. District of Columbia,* 506 F.3d 1063, 1066 (D.C. Cir. 2007) (quoting *Warren v. District of Columbia,* 353 F.3d 36, 38 (D.C. Cir. 2004). "At the pleading stage, only an allegation of the existence of a policy, practice, or custom and its causal link to the constitutional deprivation suffered is required." *Maniaci v. Georgetown Univ.,* 510 F. Supp. 2d 50, 64 (D.D.C. 2007). However, if plaintiff's "constitutional rights were not violated . . . his §1983 claims against the . . . [d]efendants must fail." *Feirson,* 506 F.3d at 1068. [2]

### B. Due Process Claims

In this section 1983 action, plaintiff alleges first that defendant violated her rights under the Due Process Clause of the Fifth Amendment. To state a due process claim, a plaintiff must allege a deprivation of interests protected by the Fifth Amendment, such as a liberty or property

---

2   Defendant argues that the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a(a), is the exclusive federal remedy for age discrimination claims in the employment context, thereby "foreclosing age discrimination claims brought pursuant to §1983." Def.'s Mem. Dismiss at 9. Plaintiff argues that the ADEA is not the exclusive remedy for rights violations that have an independent constitutional basis. Pl.'s Opp. at 6. But because plaintiff fails to state an actionable claim under section 1983, the Court does not need to resolve that issue.

interest. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985) (property interest in employment protected under the Due Process clause was created by state law*); cf. Evans v. District of Columbia*, 391 F. Supp. 2d 160, 166–7 (D.D.C. 2005) (employee had no property interest protected by the Fourteenth Amendment in continued employment).

But in this case, plaintiff fails to identify any due process right that defendant allegedly violated. *See, e.g.*, *Loudermill*, 470 U.S. at 538. Plaintiff does not allege that her liberty was infringed, and the Court cannot conclude that her due process claim was premised on an alleged property interest in continued employment with the Agency since the complaint contains no allegations suggesting that she was anything other than an at-will employee.[3] As a result, plaintiff has failed to state a claim for violation of the Due Process Clause, and these claims will be dismissed.

### C. Equal Protection Claims

#### 1. *Intentional Discrimination Claim*

Plaintiff next claims she was discriminated against in violation of her rights under the Equal Protection Clause of the Fifth Amendment. Am. Compl. ¶ 3. She alleges that defendant "assigned an overwhelming number of cases to older caseworkers, specifically, and then threatened them with disciplinary action if they failed to eliminate their backlog." *Id*. at 1–2.

In accordance with the two-pronged procedure recommended in *Iqbal,* the Court will begin its analysis by identifying the allegations in the complaint that "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950. In

---

3     At-will employees have no property interest in their employment "because there is no objective basis for believing that they will continue to be employed indefinitely." *Hall v. Ford*, 856 F.2d 255, 265 (D.C. Cir. 1988) (at-will employee who served "at the pleasure" of university president had no property interest in employment); *see also Mills v. Dist. of Columbia Dept. of Mental Health St. Elizabeth Hosp. Managers*, 2010 WL 5168887, at *4 (D.D.C. 2010) (at-will District of Columbia employee had "no protected interest in his employment").

paragraph 56 of her complaint, under the heading, "The Defendant created a hostile work environment for older caseworkers, including Ms. Ivey, by assigning them an overwhelming number of cases and then threatening them with disciplinary action if they did not eliminate their backlog," plaintiff simply repeats the heading. She alleges that "[m]anagement deliberately assigned an overwhelming number of cases to older caseworkers and then threatened them with disciplinary action if they did not eliminate their backlog." Compl. ¶ 56. She also alleges "[i]n general, younger caseworkers were not assigned as many cases as older caseworkers." Compl. ¶ 64. These are the sort of conclusory allegations that will not suffice to state a cause of action.

*Iqbal* also states: "when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." 129 S. Ct. at 1950. All of the key facts underlying plaintiff's discrimination claim are set out in paragraphs 61 through 66. Plaintiff alleges that 11 of the 14 case workers who were assigned more than 40 cases–or approximately 78.5% of them–were 40 year of age or older. Compl. ¶ 62. But the complaint does not go on to provide the context that would make this statistic meaningful. What percentage of the total group of 50 caseworkers was over 40 years old? What were the ages of the caseworkers with smaller caseloads? The complaint says only that "caseloads for younger caseworkers were *generally* kept below 40" and "*[i]n general*, younger caseworkers were not assigned as many cases as older caseworkers." Am. Compl. ¶¶ 61-64 (emphasis added). But were their caseloads significantly smaller than those assigned to the older employees? And what was the level of experience of the younger workers?

Even if these barebones allegations were enough to describe some sort of disparate impact on the older workers, the complaint also fails to allege the necessary element of

8

discriminatory purpose — *i.e.*, that these workers received a larger share of the work specifically because of their age.

To state a claim for intentional discrimination under the Equal Protection Clause, a plaintiff "must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 129 S. Ct. at 1948; *see also Washington v. Davis*, 426 U.S. 229, 240–245 (1976) (to state a claim for equal protection violation, a plaintiff must allege an improper motive and not merely a discriminatory impact.). "'[P]urposeful discrimination requires more than 'intent as volition or intent as awareness of consequences;' it instead involves a decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." *Iqbal,* 129 S. Ct. at 1948 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)); *see also Atherton v. Dist. of Columbia Off. of the Mayor*, 567 F.3d 672, 688 (D.C. Cir. 2009); *Aref v. Holder*, No. 10-cv-0539, 2011 WL 1195813, at *18 (D.D.C. March 30, 2011); *Hall v. Lanier*, No. 07-cv-0970, 2011 WL 635294, at *3 (D.D.C. Feb. 23, 2011).

Plaintiff fails to allege a plausible claim that defendant violated her equal protection rights by assigning cases "because of, not merely in spite of" her age. *See Iqbal*, 129 S. Ct. at 1948 (quotations omitted). Plaintiff's allegations of intentional discrimination consist solely of her statement that all but 3 of the 14 workers with over 40 cases was over 40 years old and that "caseloads for younger caseworkers were generally kept below 40." Am. Compl. ¶¶ 61-64. Plaintiff makes no express claim that the defendant was motivated by some discriminatory animus, and the Court cannot reasonably infer from her allegations that defendant "acted with a discriminatory intent or purpose." *Iqbal*, 129 S. Ct. at 1948. Indeed, there are multiple other inferences that can be drawn from these allegations. For example, at a time when the Agency was under intense public scrutiny, one reasonable interpretation of the allegations is that more

9

cases were assigned to older caseworkers because of their superior experience and knowledge of child protective services. The complaint provides an explanation for why, during the surge of reports, the defendant would have assigned more cases to plaintiff — she specifically alleges that she had received outstanding performance reviews and promotions. Am. Compl. ¶ 25. Thus, plaintiff's conclusory allegations of discrimination, without any supporting information, "stop short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555); *see also Atherton*, 567 F.3d at 688 (reversing district court finding that plaintiff stated equal protection claims where "spare facts and allegations . . . do not permit the court to infer more than the mere possibility of misconduct") (internal citations omitted); *Ekwem v. Fenty*, 666 F. Supp. 2d 71, 79 (D.D.C. 2009) (another plaintiff challenging the Agency's assignment of cases in the wake of the Jacks murders could not establish a claim for equal protection violation where he failed to allege any facts indicating the presence of discriminatory intent).

Moreover, even assuming that plaintiff had plausibly alleged intentional discrimination, her claim fails because "[p]roof of a single incident of unconstitutional activity is insufficient to impose liability [under section 1983] unless there was proof that there was a policy in place that was unconstitutional." *Sanders v. Dist. of Columbia*, 522 F. Supp. 2d 83, 88 (D.D.C. 2007) (citing *Monell*, 436 U.S. at 694. While plaintiff alleges that she had a larger caseload than any other caseworker, and that other older workers were also asked to carry a heavy load, this is not enough to state a claim that defendant used a "discriminatory policy or practice" to distribute more cases to older employees because of their age. *See Plater v. Dist. of Columbia Dep't of Transp.*, 530 F. Supp. 2d 101, 108 (D.D.C. 2008). Even if these allegations were "consistent with [] defendant's liability," the Court cannot reasonably infer from what is in the complaint

that defendant "acted with discriminatory purpose." *Iqbal,* 129 S. Ct. at 1948. Plaintiff therefore has not established the necessary elements of an equal protection claim under section 1983, and this claim must be dismissed.

2. *Constructive Discharge Claim*

The Court next turns to plaintiff's claim for constructive discharge. To establish a claim for constructive discharge, a plaintiff must prove that (1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment. *See Carter v. George Washington Univ.*, 180 F. Supp. 2d 97, 110 (D.D.C. 2001) (citing *Clark v. Marsh*, 665 F.2d 1168, 1173–74 (D.C. Cir. 1981); *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997) (holding that a plaintiff alleging constructive discharge must show that the "employer deliberately made working conditions intolerable and drove the employee out" of the position) (internal quotations omitted).[4] "The mere existence of workplace discrimination is insufficient to make out a constructive discharge claim." *Veitch v. England,* 471 F.3d 124, 130 (D.C. Cir. 2006). Rather, constructive discharge "requires a finding of discrimination *and* the existence of certain 'aggravating factors' that would force a reasonable employee to resign." *Id.* (quoting *Mungin,* 116 F.3d at 1558) (emphasis in original); *Clark v. Marsh*, 665 F.2d 1168, 1173 (D.C. Cir. 1981) ("[C]ase law does indicate a general reluctance to predicate a finding of constructive discharge upon the fact of discrimination.")

Plaintiff has failed to allege facts that "plausibly give rise to an entitlement to relief" for constructive discharge. *Iqbal*, 129 S. Ct. at 1949–50; *see also Bryant v. Pepco*, 730 F. Supp. 2d

---

4 Defendant argues that plaintiff's claim for constructive discharge should be dismissed because she has failed to exhaust her administrative remedies. *See* Def.'s Mem. to Dismiss at 5. The Court does not reach this question, however, because it finds that plaintiff fails to state a claim for constructive discharge.

25, 32 (D.D.C. 2010) ("formulaic recitation" of the elements of constructive discharge is insufficient to state a claim under *Twombly*). Since plaintiff does not plausibly allege that that defendant "acted with discriminatory purpose," she fails to plead intentional discrimination. *Iqbal*, 129 S. Ct. at 1948. She similarly fails to allege that her "employer deliberately made working conditions intolerable and drove [her] out." *Mungin*, 116 F.3d at 1558. With respect to the working conditions, plaintiff alleges that she "worked late on weekdays and put in time on weekends," that "her work schedule gave her little time for family and friends," and that she "had no time for her normal recreational activities such as golf." Am. Compl. ¶¶ 39–41. She states that the size of her caseload made her unable to perform effectively, *id.* ¶ 45, or to live up to a social worker's professional standards. *Id.* ¶ 48. Fearful about the harm that could befall the children in her backlog, "she was worried and had trouble sleeping," *id.* ¶44, and she felt "hopeless," "angry," and "depressed." *Id.* ¶¶ 43, 47, 56.

While the court assumes the veracity of plaintiff's stated concerns about the risks to children in the Agency's ballooning caseloads, her allegations fall short of stating a plausible claim for constructive discharge. *See Crenshaw v. Georgetown Univ.,* 23 F. Supp. 2d 11, 20 (D.D.C.1998) (plaintiff's "subjective belief that her tenure has become intolerable is insufficient to support a claim for constructive discharge"). Even if the Court were persuaded that plaintiff had alleged sufficient facts to describe an "intolerable" working environment, what plaintiff fails to do is set forth a basis for the conclusion that these conditions were "deliberately" imposed by her employer.[5] Simply labeling defendant's assignment of cases to older caseworkers as

---

5    Even though the *LaShawn* consent decree ordered the Agency to assign a maximum of 12 cases, the allegations do not support an inference that defendant deliberately made working conditions intolerable for older employees. As the Court has already discussed, there are a number of reasons that management may have been inclined to assign cases to older

"deliberate" is insufficient to plausibly claim that defendant intended to create "intolerable working conditions and dr[i]ve [her] out." *Mungin,* 116 F.3d at 1558. *See also Iqbal,* 129 U.S. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

For one thing, plaintiff's complaint makes it clear that the Agency was dealing with an exigent situation, created by the decision to discharge a number of workers associated with the Jacks case at the very time that the publicity surrounding the case prompted a surge in reports. And, plaintiff's own allegations detract from her claim that defendant deliberately engineered a situation that would prompt her to leave. The complaint alleges that plaintiff began complaining to management about her excessive workload in April of 2008, *see* Am. Compl. ¶ 49, but by July 2008, her caseload had decreased from approximately 54 cases to 30. *See* Am. Compl. ¶ 72. The Court cannot reasonably conclude that defendant was deliberately assigned too many cases for the purpose of driving her out in the face of her own allegation that she resigned at a time when her caseload was going *down*. Indeed, the opposite conclusion is more plausible. Furthermore, plaintiff does not even allege that it was the caseload that triggered her resignation. Rather, she states that she was placed on administrative leave because a child within her caseload had died, and she resigned "sensing that her termination was imminent." Am. Compl. ¶ 81.

Finally, presuming that defendant placing plaintiff on administrative leave is the alleged "aggravating factor," plaintiff also fails to show that this event justified her resignation. *See Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006) ("Aggravating factors are those aspects of a discriminatory work environment that, by making the workplace so disagreeable, prevent the employee from seeking remediation on the job.") (internal quotations omitted). Plaintiff's

---

caseworkers, including that they were the most experienced and capable employees working in the Child Protective Services Unit at the time.

allegations state that she was placed on administrative leave after the accidental death of a child in one of her assigned cases. *See* Am. Compl. ¶ 80. In light of the Jacks murders only seven months before and the serious nature of the event that led to her administrative leave, defendant's response appears appropriate based on the allegations. Because plaintiff "fail[s] to allege or show facts that could amount to constructive discharge," this claim must be dismissed. *See Turner v. Dist. of Columbia*, 383 F. Supp. 2d 157, 171–2 (D.D.C. 2005).

### III.  PLAINTIFF'S § 1985 CLAIM

Plaintiff concedes that she does not have a conspiracy claim under 42 U.S.C. § 1985. Pl.'s Opp. at 8. Accordingly, this claim will be dismissed.

### IV.  PLAINTIFF'S CLAIM UNDER *LASHAWN V. FENTY*

Plaintiff alleges that defendant violated her rights under the *LaShawn* consent decree by assigning her more cases than the maximum designated by the consent decree. Am. Compl. ¶ 5. Because plaintiff was not a party to the consent decree and does not suggest that she was "one of the intended beneficiaries in order to have enforcement rights," *SEC v. Prudential Sec., Inc.*, 136 F.3d 153, 159 (D.C. Cir. 1998), she does not have a private right of action under *LaShawn v. Fenty*. *See Ekwem*, 666 F. Supp. 2d at 81.[6] The Court, therefore, will grant defendant's Motion to Dismiss with respect to these claims.

---

6   To the extent that plaintiff relies on the consent decree as a standard for determining intolerable working conditions, the Court considered this allegation as part of the claims for intentional discrimination and constructive discharge and has determined that plaintiff has not alleged a plausible claim. *See infra* Section B(ii).

## CONCLUSION

For the foregoing reasons, and based upon the motion, the opposition, and the entire record in the case, defendant's motion to dismiss is granted. Accordingly, the Court dismisses plaintiff's claims for failure to state a claim upon which relief can be granted and will enter judgment for defendant. An appropriate order will issue.

/s/
AMY BERMAN JACKSON
United States District Judge

DATE: June 6, 2011